**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RACHEL MEDBERY, | : | CIVIL CASE NO. |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| DELOITTE SERVICES, LP, | : | |
| Defendant. | : | FEBRUARY 25, 2021 |

**COMPLAINT**

**I.**     **PRELIMINARY STATEMENT**

1.    This action is brought against the defendant, Deloitte Services, LP, pursuant to the Age Discrimination in Employment Act, in which the plaintiff seeks declaratory, injunctive and equitable relief, compensatory damages, and costs and attorney fees for age discrimination suffered by the plaintiff when the defendant, Deloitte Services, LP, terminated the plaintiff's employment on account of the plaintiff's age.

2.    In addition, this action is brought against the defendant, Deloitte Services, LP, pursuant to the Connecticut Fair Employment Practices Act, Section 46a-51, et seq., in which the plaintiff seeks declaratory, injunctive and equitable relief, compensatory damages, and costs and attorney fees for the age discrimination suffered by the plaintiff when the defendant, Deloitte Services, LP, terminated the plaintiff's employment on account of the plaintiff's age.

II.     **JURISDICTION**

3.      This action arises under the Age Discrimination In Employment Act, Title 29 U.S.C.
        §621 et seq.

4.      Moreover, the plaintiff brings this action claiming a violation of the Connecticut Fair
        Employment Practices Act.

5.      Jurisdiction is invoked pursuant to Title 28 U.S.C. §1343(a)(3), Title 28 U.S.C.
        §1343(a)(4), and Title 29 U.S.C. §626(b).

6.      Jurisdiction over the plaintiff's state law claim is invoked pursuant to the Court's
        supplemental jurisdiction.

7.      All conditions precedent to jurisdiction under the Age Discrimination in Employment
        Act, have occurred or have been complied with in the following manner:

        a.  A charge of employment discrimination on the basis of age was filed on or
            about November 6, 2020, with both the State of Connecticut Commission on
            Human Rights and Opportunities and the United States Equal Employment
            Opportunity Commission, which filings were within 300 days of the
            commission of the unlawful employment practices alleged herein;

        b.  More than 60 days have passed since plaintiff filed a complaint with the
            United States Equal Employment Opportunity Commission charging the
            defendant, Deloitte Services, LP, with age discrimination.

8.      Declaratory, injunctive, compensatory damages, liquidated damages and equitable
        relief is sought pursuant to Title 28 U.S.C. §2201, §2202, and Title 29 U.S.C. §626.

9.      Costs and attorney fees may be awarded pursuant to Title 29 U.S.C. §626.

### III.     VENUE

10.     This action also properly lies in the United States District Court for the District of Connecticut pursuant to Title 29 U.S.C. §626, because the unlawful employment practice of which the plaintiff complains was committed in this judicial district.

### IV.     PARTIES

11.     The plaintiff, Rachel Medbery, whose date of birth is July XX, 1971, is a citizen of the United States residing in the Town of Bethany, State of Connecticut.

12.     The defendant, Deloitte Services, LP, is a corporation organized and existing under the laws of the State of Delaware.

13.     The defendant, Deloitte Services, LP, has a principal place of business in the State of Connecticut, and is registered with the Secretary of the State of Connecticut under the name Deloitte Services Limited Partnership.

14.     The defendant is a person within the meaning of Title 29 U.S.C. §630 (a).

15.     The defendant is an employer within the meaning of Title 29 U.S.C. §630 (b).

16.     The defendant employs in excess of twenty employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year.

### V.      FACTS

17.     The plaintiff is a forty-nine year old citizen of the United States residing in the State of Connecticut.

18.     The defendant is the Deloitte Services, LP, is a corporation, organized and existing under the laws of Delaware, with a principal place of business located at 695 Main Street, Stamford, Connecticut 06901.

19.     On January 15, 2007, the defendant hired the plaintiff as a Meeting Planner, National Meeting and Event Service after she had earned her MBA in International Business in 2006.

20.     As a Meeting Planner, National Meeting and Event Service, the plaintiff was responsible for large cross functional meetings for defendant's industry leaders.

21.     In her position as a Meeting Planner, National Meeting and Event Service, the plaintiff capably managed over forty meetings and events annually.

22.     In 2008, the plaintiff became a Team Lead for the National Meetings Services (NMS) Operations in which position she oversaw the NMS Operations Team in connection with the processing of all invoices, payments, reporting and analysis for defendant's meetings and events.

23.     In 2010, the plaintiff was promoted to a management level position, Manager of the Video Conference Team, in which position she built a videoconference support team of 14 virtual professionals (five in India, two on west coast of the United States, one on the east coast of the United States, and six in the central United States) and implemented a customer focused business process that incorporated new videoconference technology and enhanced customer services.

24. In 2012, the plaintiff was nominated and selected for Deloitte's 2012 Women's Initiative Manager Action Committee (WIMAC), an opportunity provided only to high performing employees within the company.

25. In 2012, the plaintiff was also appointed Manager of the Regional Meetings and Events Team where she developed and implemented a regional events strategy to streamline protocols for certain types of events that were produced in each region.

26. In the role of Manager of the Regional Meetings and Events Team, the plaintiff designed and implemented a vendor contract review process with the Office of General Counsel mitigating defendant's legal exposure and risk for meetings and events and managed six regional Meeting Planners and expanded meeting support services to Chicago and India.

27. In 2014, the plaintiff was promoted to the position of Technology Liaison for National Meeting and Event Services.

28. In her position as Technology Liaison for National Meeting and Event Services, the plaintiff was responsible for aligning technology needs with National Meeting Services (NMS) strategy by integrating functional processes with the appropriate technologies.

29. Additionally, in her role as Technology Liaison for National Meeting and Event Services, the plaintiff worked with the defendant's ITS and NMS to develop technology strategy that aligns with overall business strategy.

30.  In May of 2017, the plaintiff began working as the Technology Liaison Project Manager for Administrative Services on their technology project called "Aspire."

31.  The technology being developed in this project had the goal of assisting the defendant in implementing a new strategy for providing administrative support to its partners.

32.  In the position of Technology Liaison Project Manager for Administrative Services, the plaintiff worked for Senior Manager, Kelly Herzog, who was her internal client, and was supervised by Dawn Eagle during her first year in the position, and then by Steve Warnke.

33.  The plaintiff led projects to align technology needs to business strategy by integrating functional processes with appropriate technologies and oversaw the Administrative Services Customer Relationship Management (CRM) technology.

34.  As part of the "Digital Transformation" of the Administrative Services division, there were multiple components; the technology ("Aspire"), and the new administrative service center, the Executive Services Center ("ESC").

35.  The ESC would be a centrally located group of administrative professionals that would work in groups and teams.

36.  One of the primary strategic goals of the ESC was to replace older and more highly compensated administrative professionals who were "set in their ways of working" with younger more "technology savvy" individuals.

37.    Dallas was chosen as the location for the ESC because it was considered a lower wage market and young talent could be acquired directly out of college at a lower salary.

38.    In contrast to the Dallas ESC location, the New York City administrative assistants were identified by Management as being too costly because most had been in their positions for as many as 10, 20, or even 30 years with compensation that was higher than some Managers and Sr. Managers that to whom they reported at the time.

39.    Throughout her last three years of employment with the defendant, having reached the age of her late-forties, and in spite of her steadily increasing list of accomplishments, the plaintiff was consistently and continuously passed over, demoted, and barred from advancement opportunities due to her age.

40.    In the Spring of 2018, Kelly Herzog moved from the Administrative Services division to lead the Workplace Services Technology team.

41.    In the Spring of 2019, the plaintiff was informed that the Project Management department to which she was assigned would be dismantled and team members, including the plaintiff, would be laid off if they were unable to find employment in other positions with the defendant.

42.    The plaintiff was further informed that her position would be moved into the Technology Team which Kelly Herzog would be leading.

43.     The defendant led the plaintiff to believe that she would be allowed to transition in her then current role to the Workplace Services Technology Team, which was being headed by Kelly Herzog.

44.     Although the plaintiff currently filled a Project Manager role under the Project Management Offices (PMO) reporting to Steve Warnke, she was informed that her team and everyone that reported to Steve Warnke would need to find other positions within the defendant or be let go from employment with the defendant in the Spring of 2019.

45.     The plaintiff started interviewing for other positions with the defendant, but in spite of her many accomplishments and superb qualifications, she was consistently passed over without legitimate reasons.

46.     In the first week of February 2019, the plaintiff interviewed for an opening with the defendant's Learning and Development department.

47.     Although the plaintiff was highly qualified for the position, she was passed over for this position without a legitimate reason.

48.     The plaintiff was informed by the defendant that she may be able to transfer to the Technology Team but would not be able to maintain her current manager roll.

49.     The defendant asserted that since there was already another manager assigned to the Technology Team and since any future vacant manager positions would be offered to one of the managers that already served on the Technology Team, she would not be able to maintain her manager's role

50.     When a manager position became available on the Technology Team, for which the plaintiff was qualified, she was again passed over because, according to David Brod, Although the plaintiff was more qualified to fill the manager role on the Technology Team, David Brod, the National Meeting Services Director, was supposedly told by management that the position would be offered to Jane Ebner because she was an "older employee" and she was already a manager on the Workplace Services Technology team.

51.     The plaintiff later discovered from information provided to her by David Brod that the "promotion" of Jane Ebner was a sham, intended by the defendant to mislead another of its older employees.

52.     The plaintiff was told that there would be an opening in Level-4 position on the Technology Team, which is one level below the manager level position for which she would be considered.

53.     The information that was communicated to the plaintiff by the defendant about the available manager positions in the Technology Team proved to be untrue, as the defendant brought in an additional manager from outside the Technology Team when Jen Harris, a senior manager under 40 years old, took the lead role on the Technology Team, and then again when Valerie Hayes took the role from Jen Harris three months later and brought in Quiana Downie, a thirty-three year old woman, from outside the Technology Team, as a manager.

54.    Ms. Downie was assigned the manager position that the plaintiff had been denied even though Ms. Downie had only been employed by the defendant for five years.

55.    The plaintiff, who was forty-nine years of age at the time, was as qualified as Jen Harris, who was under forty years of age, to fill the vacant position of senior manager on the Technology Team.

56.    The plaintiff was substantially more qualified than Quiana Downie, who was thirty-three years of age, to be selected by the defendant to fill another vacant position of manager on the Technology Team.

57.    Despite being as qualified as Jen Harris, and substantially more qualified than Quiana Downie for appointment to the vacant manager positions on the Technology Team, the plaintiff was denied an appointment to either manager or senior manager positions, and, instead, was demoted to the Level-4 position on the Technology Team.

58.    Shortly after the defendant had demoted the plaintiff to the Level-4 position on the Technology Team, David Brod, the National Meeting Services Director, admitted to the plaintiff that even though Jane Ebner had been appointed to the manager position, he was in the process of "managing [Jane Ebner] out" and that "no one expected [Jane Ebner] to be able to do the job."

59.    Jane Ebner, who was in her late fifties, was the only other person, besides the plaintiff, who was laid off from the Technology Team in June of 2020.

60.    Dave Brod had led the plaintiff to believe that she would be offered Jane Ebner's position after she was "managed out."

61.    Despite being targeted by Dave Brod for termination, as was Jane Ebner, the plaintiff
       continued to perform her duties and responsibilities in an exemplary manner resulting
       in the Technology Team's indisputable success, largely attributable to the plaintiff's
       efforts, even though Jane Ebner was still "leading" the team.

62.    Upon Kelly Herzog's departure from her employment with the defendant in June
       2019, she recommended that the plaintiff succeed her as Senior Manager.

63.    Once again, the defendant passed over the plaintiff for appointment to a manager
       position without legitimate cause.

64.    In October of 2019, the plaintiff attended a training event where Senior Manager Jen
       Harris and Director Dave Brod told the plaintiff's team that it would be transitioning
       to Workplace Experience, and report to Director, Valerie Hayes.

65.    In November 2019, Quiana Downie was appointed to the Technology Team as a
       manager.

66.    Even though the plaintiff was more experienced than Quiana Downie and was
       responsible for the success of the project on behalf of Jane Ebner, Quiana Downie
       was appointed manager of the team, while the plaintiff remained a Level-4
       subordinate to her.

67.    Despite multiple manager positions becoming available after the plaintiff's demotion
       to Leve-4 position, the defendant repeatedly refused to appoint the plaintiff to these
       positions, both within and outside of her team, instead choosing less qualified
       younger employees to fill the manager positions.

68.     After her demotion to the Level-4 position, the plaintiff informed the director of the department, Valerie Hayes, that she desired to be considered for appointment to any manager position that became available.

69.     The plaintiff was never informed that the defendant was seeking applications from qualified candidates, including the plaintiff, for the manager positions that it filled on the Technology Team after the plaintiff's demotion.

70.     On or around January of 2020, Valerie Hayes finally informed the plaintiff that she wanted the plaintiff to apply for manager positions on her team.

71.     In February 2020, Valerie Hayes restored the plaintiff to the manager position on the Administrative Services Technology Team.

72.     In appointing the plaintiff to the manager position on the Administrative Services Technology Team, Valerie Hayes admitted to the plaintiff that Quiana Downie did not have the necessary skills and experience to direct the team and that the plaintiff would be required to assist and mentor Quiana Downie.

73.     During the spring of 2020, the plaintiff was responsible for mentoring Quiana Downie, as well as performing the critical work for the Office of Strategic Initiatives.

74.     Since being restored to a manager level role, the plaintiff's performance had been exemplary and contributed to the success of the defendant's future operations.

75.     Additionally, the plaintiff continued to perform key duties of Jane Ebner on Administrative Services projects.

76.     In the Spring of 2020, Valerie Hayes hired a new Level-4, Kate Blanchard and
        assigned her to report to the plaintiff.

77.     Valerie Hayes instructed the plaintiff to start training Kate Blanchard on basic
        technology project management.

78.     Although Valerie Hayes had led Plaintiff to believe that the manager position to
        which she had appointed the plaintiff was a meaningful career opportunity, the
        plaintiff discovered that Valerie Hayes had been preparing Quiana Downie and Kate
        Blanchard to replace the plaintiff.

79.     On Friday, May 29, 2020, during a telephonic "Town Hall Meeting" attended by all
        the Internal Services' staff, the defendant announced that layoffs would be
        forthcoming, commencing the following week.

80.     Pete Shimer, the defendant's Chief Operating Officer, informed the employees of the
        defendant that approximately five percent of employees across defendant's workforce
        would be laid off.

81.     Pete Shimer untruthfully stated that the selection criteria in determining which
        employees would be laid off would be based on individual performance and the
        business needs of the company.

82.     The defendant did not utilize objective criteria, other than the nebulous "business
        needs" of the company in determining which employees would be laid off.

83.     Under an objective assessment of individual performance, the plaintiff's history of
        outstanding job performance would have exempted her from being laid off.

84.     In addition, since the plaintiff was leading essential projects on behalf of the defendant, she should not have been considered for layoff under a "business needs" objective standard.

85.     Despite the plaintiff's excellent job performance, and the important role she played in leading projects on behalf of the defendant, the plaintiff was laid off from her employment with the defendant, while the younger and less qualified employees, Kate Blanchard and Quiana Downie, were assigned her duties and responsibilities.

86.      During the plaintiff's more than thirteen years in the employ of the defendant, she had always received top ratings on her performance reviews as well as being awarded bonuses and pay increases even when bonuses and increases had been restricted by the defendant.

87.     At the time of her termination, on June 26, 2020, the plaintiff had more work and projects assigned to her than she had been assigned in recent years.

88.     The defendant chose to layoff the plaintiff instead of Quiana Downie, even though Quiana Downie (1) was incapable of performing the work that the plaintiff had been doing, (2) had had her leadership presentation deck reassigned to the plaintiff because of her deficient management qualities, and (3) had failed to perform basic management functions.

89.     The defendant terminated the plaintiff's employment as manager while retaining the similarly situated and substantially younger Quiana Downie, even though she was objectively far less qualified and experienced than the plaintiff.

90.     Further, although the plaintiff was substantially more qualified and experienced than the new Level-4, Kate Blanchard, the defendant terminated the plaintiff while the much younger, less-qualified, and significantly less experienced Kate Blanchard was retained in the Level-4 role that the plaintiff had occupied until several months before her termination.

91.     The defendant has intentionally and willfully discriminated against the plaintiff in the terms, conditions, and privileges of her employment because of her age.

92.     During the entire course of her employment with the defendant, the plaintiff performed her duties and responsibilities in an exemplary manner.

93.     The reduction in force rationale supposedly employed by the defendant to explain its termination of the plaintiff's employment did not justify the defendant's selection of the plaintiff for termination.

94.     Based on the factors on which the defendant claimed it would base its layoff decisions, the defendant would not have laid off the plaintiff but would have laid off the substantially younger, Quiana Downie and Kate Blanchard.

95.     Based on the factors supposedly governing the defendant's reduction in force, the termination of the plaintiff's employment was unwarranted.

96.     The plaintiff had been employed by the defendant for approximately thirteen years in various positions; she possessed the abilities and qualifications for employment as a

manager on the Administrative Services Technology Team, as well as the Level-4 position.

97.     Substantially younger employees, whose experience, qualifications, and versatility did not exceed those same traits possessed by the plaintiff, were allowed by the defendant to continue their employment, when, on the other hand, it terminated the plaintiff's employment.

98.     The plaintiff was fully qualified to perform the duties as a manager for the defendant.

99.     The plaintiff was fully qualified to perform the duties of a Level-4 employee with the defendant.

100.    The plaintiff performed her duties and responsibilities from the date of her initial hiring through the date of her termination in a most competent and capable manner.

101.    The defendant did not possess a legitimate non-discriminatory reason to terminate the plaintiff's employment.

102.    The plaintiff's age was the "but-for" cause behind the defendant's decision to terminate the plaintiff's employment.

103.    The reasons advanced by the defendant for terminating the plaintiff's employment were untrue and were pretexts to justify the termination of the plaintiff's employment on account of her age.

104.    The defendant terminated the plaintiff's employment on account of the plaintiff's age.

105.    The plaintiff has suffered financially as result of the discriminatory conduct of the defendant.

106.    The plaintiff has suffered emotional stress as result of the discriminatory conduct of the defendant.

**VI.    FIRST CAUSE OF ACTION (UNLAWFUL AGE DISCRIMINATION UNDER THE ADEA)**

107-212.  The plaintiff incorporates as if re-alleged paragraphs 1 through 106.

213.    The defendant discriminated against the plaintiff because of her age when it selected the plaintiff for layoff instead of other employees, in particular, Quiana Downie and Kate Blanchard, within its employ, who were substantially younger and substantially less qualified than the plaintiff.

214.    The Age Discrimination in Employment Act explicitly prohibits discriminatory practices based on age.

215.    The defendant violated the provisions of the Age Discrimination in Employment Act, when it selected the plaintiff for layoff instead of other employees within its employ who were substantially younger and substantially less qualified than the plaintiff.

216.    The plaintiff is fully qualified for employment as a manager for the defendant.

217.    The plaintiff is fully qualified for employment as a Leve-4 employee with the defendant.

218.    The plaintiff suffered an adverse employment action when the defendant, terminated his employment.

219.    The defendant retained employees, who were similarly situated to the plaintiff except they were substantially younger, and less qualified than the plaintiff.

220.   But for the plaintiff's age, she would have remained employed as a manager and/or Level-4 employee with the defendant.

221.   There did not exist a legitimate, non-discriminatory reason for the defendant to lay the plaintiff off from her employment with it as a manager and/or Level-4 employee.

222.   The plaintiff was fully qualified to perform the duties of the position of manager and/or Level-4 employee.

223.   The defendant terminated the plaintiff employment as a manager and/or Level-4 employee on account of the plaintiff's age.

224.   Because the plaintiff's age was the determinative factor for decision by the defendant to terminate the plaintiff's employment as a manager and/or Level-4 employee, the defendant violated the provisions of the Age Discrimination and Employment Act, Title 29, U.S.C. 623(a)(1).

225.   The defendant engaged in age discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under The Age Discrimination and Employment Act, Title 29 U.S.C. §623 et seq.

226.   As a result of the unlawful discriminatory actions of the defendant, the plaintiff has suffered financial losses.

**VII.   SECOND CAUSE OF ACTION (VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT)**

227-332. The plaintiff incorporates as if re-alleged paragraphs 1 through 106.

18

333.   The defendant discriminated against the plaintiff because of her age when it selected the plaintiff for layoff instead of other employees,  in particular, Quiana Downie and Kate Blanchard, within its employ, who were substantially younger and substantially less qualified than the plaintiff.

334.   The Connecticut Fair Employment Practices Act explicitly prohibits discriminatory practices based on age.

335.   The defendant violated the provisions of the Connecticut Fair Employment Practices Act, when it selected the plaintiff for layoff instead of other employees within its employ who were substantially younger and substantially less qualified than the plaintiff.

336.   The plaintiff is fully qualified for employment as a manager for the defendant.

337.   The plaintiff is fully qualified for employment as a Leve-4 employee with the defendant.

338.   The plaintiff suffered an adverse employment action when the defendant, terminated his employment.

339.   The defendant retained employees, who were similarly situated to the plaintiff except that they were substantially younger, and less qualified than the plaintiff.

340.   But for the plaintiff's age, she would have remained employed as a manager and/or Level-4 employee with the defendant.

341.   There existed no legitimate, non-discriminatory reason for the defendant to lay the plaintiff off from her employment with it as a manager and/or Level-4 employee.

342.   The plaintiff was fully qualified to perform the duties of the position of manager and/or Level-4 employee.

343.   The defendant terminated the plaintiff employment as a manager and/or Level-4 employee on account of the plaintiff's age.

344.   Because the plaintiff's age was the determinative factor for decision by the defendant to terminate the plaintiff's employment as a manager and/or Level-4 employee, the defendant violated the provisions of the Connecticut Fair Employment Practices Act.

345.   The defendant engaged in age discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under Connecticut Fair Employment Practices Act.

346.   As a result of the unlawful discriminatory actions of the defendant, the plaintiff has suffered financial losses.

347.   As a result of the unlawful discriminatory actions of the defendant, the plaintiff has suffered emotional distress.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

(As to the First Cause of Action)

     a.   Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights;

b.  Enjoin the defendant from engaging in such conduct;

c.  Require the defendant to reinstate the plaintiff to the position of manager and/or Level 4 employee.

d.  Award plaintiff the equitable relief of back pay and benefits, together with prejudgment interest for the entire period as well as front salary and benefits accrual;

e.  Award plaintiff liquidated damages;

f.  Award plaintiff costs and attorney fees; and

g.  Grant such other and further relief as the Court may deem just and proper.

(As to the Second Cause of Action)

a.  Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights;

b.  Enjoin the defendant from engaging in such conduct;

c.  Require the defendant to reinstate the plaintiff to the position of manager and/or Level 4 employee;

d.  Award plaintiff the equitable relief of back pay and benefits, together with prejudgment interest for the entire period as well as front salary and benefits accrual;

e.  Award plaintiff compensatory damages;

f.  Award plaintiff costs and attorney fees; and

g.  Grant such other and further relief as the Court may deem just and proper.

IX.     **JURY DEMAND**

**THE PLAINTIFF REQUESTS A TRIAL BY JURY**.

THE PLAINTIFF – RACHEL MEDBERY


By: /s/ Thomas W. Bucci
        Thomas W. Bucci
        Willinger, Willinger & Bucci, P.C.
        1000 Bridgeport Avenue
        Suite 501
        Shelton, CT 06484
        203-366-3939
        Fax: 475-269-2907
        Email: thomaswbucci@outlook.com